RLI INSURANCE COMPANY *v.* Jackie Sue COE

90-331                                    813 S.W.2d 783

Supreme Court of Arkansas
Opinion delivered July 15, 1991
[Rehearing denied September 9, 1991.*]

---

* Brown, J., not participating.

*Hubbard, Patton, Peek, Haltom & Roberts*, by: *William G. Bullock* and *John B. Greer*, for appellant.

*Nicholas H. Patton*, for appellee.

DONALD L. CORBIN, Justice. Appellant, RLI Insurance Company, seeks to set aside an $8,002,178.15 judgment entered August 11, 1989, in the Circuit Court of LaFayette County in favor of appellee, Jackie Sue Coe. Appealing from the trial court's denial of its Motion for Relief from Judgment and its

Motion for New Trial, appellant makes four assignments of error. We find no merit in any of the arguments presented and affirm.

On December 12, 1987, Brad Beaty, appellee, and two other passengers were traveling from Taylor, Arkansas, to Lewisville, Arkansas, in Beaty's truck. It was an hour and a half before appellee's wedding was to take place and the four were on their way to the church where the ceremony was to be performed. Beaty was driving. The truck crossed the center line and hit a bridge, injuring the three passengers. On April 1, 1988, appellee and the two other passengers filed suit against Beaty in the Circuit Court of Lafayette County, alleging the wreck was caused by his negligent acts and omissions. Beaty and one of the passengers were Oklahoma residents. Appellee and the other passenger, her sister, were both Arkansas residents. Appellee alleged she suffered damages for past and future medical expenses, past and future pain, suffering and mental anguish, past and future loss of earnings, and disfigurement, in the amount of $725,000.00.

Brad Beaty was covered by a policy of liability insurance issued by Farmers Insurance Company, Inc., (hereinafter referred to as "Farmers") and having limits of $250,000.00 per person. He was also a named insured on a separate policy issued by appellant to William R. Beaty, his father, which provided "umbrella" coverage for up to an additional one million dollars.

Farmers, as primary carrier, employed G. William Lavender to defend the suit. Appellant was notified of the suit and made an agreement with Farmers that Lavender would forward to it copies of all pleadings and correspondence relating to the loss. On August 15, 1988, appellant forwarded a "reservation of rights" letter to William R. Beaty. On January 20, 1989, appellant filed suit in Oklahoma against William R. Beaty, seeking a declaratory judgment that it was entitled to rescind the policy for material misrepresentations made in the application.

Lavender forwarded all correspondence relevant to the case to appellant until he determined that no answer was going to be filed to the declaratory judgment action against William R. Beaty. He then notified Farmers that due to a conflict of interest he would no longer be able to communicate with appellant. The last correspondence forwarded by Lavender to appellant was

dated January 31, 1989.

On March 23, 1989, a trial was held at which evidence and testimony were received by the court. On April 20, 1989, a judgment was filed along with findings of fact and conclusions of law. Following an August 10, 1989 Motion for Entry of Final Judgment filed by appellee, the court, pursuant to Ark. R. Civ. P. 54, entered such a judgment. It was filed August 11, 1989.

On August 25, 1989, appellant filed a Motion to Intervene for the limited purpose of filing a Motion for Relief from Judgement and for New Trial; the same day it filed the Motion for Relief from Judgment and for New Trial. On November 3, 1989, appellant filed a Supplemental Motion to Intervene and a Supplemental Motion for Relief from Judgment. On November 6, 1989, following a hearing at which appellant presented testimony and evidence in support of its motions, the trial court entered an order allowing appellant to intervene, denying appellant's Motion for Relief from Judgment, and making various factual and legal findings in support of its rulings. It is from the adverse rulings included in the November 6, 1989 order this appeal comes.

I.

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR RELIEF FROM JUDGMENT BECAUSE THE PROCEEDINGS UPON WHICH JUDGMENT WERE HAD DENIED APPELLANT DUE PROCESS OF LAW.

Appellant cites the Fourteenth Amendment to the United States Constitution and *Davis* v. *University of Arkansas Medical Center and Collection Serv., Inc.*, 262 Ark. 587, 559 S.W.2d 159 (1977), in support of this argument. In *Davis* this court, when considering a due process issue, quoted the following language from *Goss* v. *Lopez*, 419 U.S. 565 (1975):

> There are certain bench marks to guide us, however, *Mullane* v. *Central Hanover Trust Co.*, 339 U.S. 306, 70 S. Ct. 652, 94 L. Ed. 865 (1950), a case often invoked by later opinions, said that '[m]any controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they

require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.'

*Davis*, 262 Ark. at 589, 559 S.W.2d at 161.

Appellant asserts that from the *Mullane* language it can be seen that in the context of civil litigation in the state courts of Arkansas, due process of law requires prior notice of the adjudication and prior opportunity for hearing, both being appropriate to the nature of the case. Appellant contends that, in light of the nature of this case, neither the required notice nor the required hearing was afforded.

Appellant argues that at the time of the March 23, 1989 hearing, it was "the only party having an interest adverse to Jackie Sue Coe" and as it had no notice of the hearing, it was denied due process of law. Appellant relies on *Ideal Mutual Ins. Co.* v. *McMillian*, 275 Ark. 418, 631 S.W.2d 274 (1982), in making this argument. In that case, Ideal Mutual Insurance Company insured an airplane that crashed, killing the pilot and injuring McMillian, the passenger. After the pilot's estate was closed, a negligence action was filed by McMillian against the estate of the pilot. A statute of nonclaims barred any action except to the extent that liability insurance was available. The county sheriff was appointed special administrator. He attempted to give notice of the suit to Ideal Mutual Insurance Company by mailing letters to both the attorney for the owner of the plane and Ideal Mutuel's issuing agent. The attorney received the letter addressed to him. However, the letter addressed to the issuing agent was incorrectly addressed and the issuing agent denied ever receiving it. The trial court found the notice to the insurance company was sufficient and, as the complaint was never answered, entered a default judgment against the estate of the pilot. After learning of the default judgment, the insurance company filed a Motion to Intervene under Ark. R. Civ. P. 24(a). The motion was denied. It then filed a Motion to Set Aside the Default Judgment alleging insufficient notice of the proceeding. The trial court denied that motion also. On appeal, this court reversed and remanded finding that under the statute, although the estate was the named defendant, the insurance company was the only party financially interested in the outcome of the case

and pursuant to Ark. R. Civ. P. 24(a) could have intervened as a matter of right. We held that because the insurance company did not receive notice of the suit, the Motion to Set Aside the Default Judgment should be granted and the insurance company should be allowed to intervene.

In *Ideal Mutual*, the insurance company was not given notice the action had been filed. In the case at bar, appellant admittedly knew of the pending action; it complains of not receiving notice of the March 23, 1989 trial, what it refers to as "the adjudication." Although appellant had a financial interest in the outcome of the case, and may not have been given notice the case had been set for trial, it had notice of the proceedings in that it knew the lawsuit was pending. Like the insurance company in *Ideal Mutual*, it also could have intervened as a matter of right, Ark. R. Civ. P. 24(a). Had it so intervened, it could have been present to protect its own interests.

Appellant received correspondence from Mr. Lavender until and even after the time it filed the declaratory judgment action in Oklahoma, by which it placed itself in a position adverse to that of Brad Beaty. Among the correspondence forwarded to appellant regarding the pending suit was a letter from appellee's counsel to Mr. Lavender, mailed late in 1988. In the letter, appellee offered to settle the lawsuit for $1,250,000.00. Accompanying the letter was a copy of the videotape, "a day in the life of Jackie Sue Coe."

Notice that the lawsuit is pending is the notice required to satisfy the due process requirement. *See Ideal Mutual, supra.* Appellant had not only notice the lawsuit was pending, but also notice the primary coverage would probably be exhausted.

## II.

THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR RELIEF FROM JUDGMENT BECAUSE THE RELIEF REQUESTED WAS NECESSARY TO PREVENT THE MISCARRIAGE OF JUSTICE.

Ark. R. Civ. P. 60, Relief from Judgment, Decree or Order, states in part:

(b) Ninety-Day Limitation. To correct any error

> or mistake or to prevent the miscarriage of justice, a decree or order of a circuit, chancery or probate court may be modified or set aside on motion of the court or any party, with or without notice to any party, within ninety days of its having been filed with the clerk.

Appellant maintains that at the March 23, 1989 hearing there was no justiciable controversy between the parties before the court and, thus, the machinery of the court system was used as an instrumentality for later extortion against a non-party. It maintains that such extortion was the object of the trial is obvious from the following: the parties acquiesced in the entry of a judgment for more than ten times the damages pleaded; appellant was not notified of the entry of the judgment at the time it was entered; and almost exactly thirty days after entry of the judgment, appellee sued appellant for over eight million dollars on the basis of an assignment of rights she received from Brad Beaty. Appellant claims these events resulted in a miscarriage of justice which should have been prevented by the trial court's granting it relief pursuant to Rule 60.

■ The only limitation on the exercise of the power to set aside the judgment pursuant to Rule 60 is addressed to the sound discretion of the court. *Massengale* v. *Johnson*, 269 Ark. 269, 599 S.W.2d 743 (1980).

Appellant maintains the trial court's finding that it failed to make a prima facie case showing any defense to the original cause of action as required by Rule 60(d) is inapplicable. Rule 60(d) provides as follows:

> (d) Valid Defense to Be Shown. No judgment against a defendant, unless it was rendered before the action stood for trial, shall be set aside under this rule unless the defendant in his motion asserts a valid defense to the action and, upon hearing, makes a prima facie showing of such defense.

Appellant contends "the action" in this case includes what were at the time the judgment was entered, the pending claims of the other two passengers, and therefore, the hearing of March 23, 1989, comprised only a part of the action. Appellant maintains that as the requirement of establishing a meritorious defense is

inapplicable where the judgment from which relief is sought "was rendered before the action stood for trial" and the judgment in the case at bar was rendered before "the action stood for trial," the requirement of a prima facie showing of a valid cause of action is inapplicable.

■ Appellant fails, however, to support this contention with either convincing argument or authority. As we have said many times, assignments of error which are unsupported by convincing argument or authority, will not be considered on appeal unless it is apparent without further research that they are well taken. *Goodwin* v. *Harrison*, 300 Ark. 474, 780 S.W.2d 518 (1989).

Alternatively, appellant contends the requirement of the establishment of a prima facie case of a meritorious defense was met. It contends that in its Supplemental Motion for Relief from Judgment it pleaded that Brad Beaty had a valid defense to the claim of appellee in that she was a participant along with Beaty in a joint enterprise within the contemplation of such Arkansas cases as *Lewis* v. *Chitwood Motor Co.*, 196 Ark. 86, 115 S.W.2d 1072 (1938).

■ This court in *Tucker* v. *Johnson*, 275 Ark. 61, 628 S.W.2d 281 (1982), defined "meritorious defense" as:

[E]vidence (not allegations) sufficient to justify the refusal to grant a directed verdict against the party required to show the meritorious defense. In other words, it is not necessary to prove a defense, but merely present sufficient defense evidence to justify a determination of the issue by a trier of fact.

*Tucker*, 275 Ark. at 66, 628 S.W.2d at 283-84.

■ In *Neal* v. *J.B. Hunt Transp. Inc.*, 305 Ark. 97, 805 S.W.2d 643 (1991), this court considered whether the trial court's giving a jury instruction on joint enterprise was error. In *Neal*, both the driver of a car and the passenger brought a negligence action against a trucking company, alleging one of the company's trucks ran them off the road. The jury found in favor of the trucking company. On appeal, the driver and passenger argued it was error to give a joint venture instruction absent a showing of some business relationship or purpose common to

them both. We stated that a finding of a joint enterprise requires a showing of "an equal right to direct and govern the movements and conduct of each other in respect to the common object and purpose of the undertaking." *Neal*, 305 Ark. at 101, 805 S.W.2d at 645. We found a basis for the joint enterprise instruction in testimony of the driver. She said she would have turned the driving back over to the passenger if he had asked. We stated that assuming the evidence is sufficient to raise an issue of negligence on the part of the driver of the vehicle and it remains the same on the matter of right to control the vehicle, the giving of an instruction on joint enterprise was not error; the essential question is whether the parties can be found by implication to have agreed to an equal voice in the management of the vehicle, and in the normal and usual case is an issue of fact for the jury.

In the case at bar, appellant asserted the defense of joint enterprise in its November 3, 1989 Supplemental Motion for Relief from Judgment. However, the record is devoid of any evidence that appellee had an equal right to direct and govern the movements and conduct of Brad Beaty "in respect to the common object and purpose of the undertaking." Because there is no evidence to justify a determination of the issue, we cannot say the trial court abused its discretion by refusing to set aside the August 11, 1989 Final Judgment.

### III.

### THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR RELIEF FROM JUDGMENT BECAUSE UNCONSCIONABLE FRAUD WAS PRACTICED BY JACKIE SUE COE IN OBTAINING THE JUDGMENT.

Appellant argues that pursuant to Ark. R. Civ. P. 60(c)(4), the trial court should have set aside the judgment for fraud practiced by appellee, by and through her counsel. The relevant portion of Rule 60 provides as follows:

(c) Grounds for Setting Aside Judgment, Other Than Default Judgment, After Ninety Days. The court in which a judgment, other than a default judgment . . . has been rendered or order made shall have the power, after

the expiration of ninety (90) days after the filing of said judgment with the clerk of the court, to vacate or modify such judgment or order:

. . . .

(4) For fraud practiced by the successful party in obtaining the judgment.

■ Appellant relies on *Davis* v. *Davis*, 291 Ark. 473, 725 S.W.2d 845 (1987), in which we construed Rule 60 and held that "fraud" sufficient to compel the setting aside of a judgment is:

[A] breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declared fraudulent because of its tendency to deceive others . . . Neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud.

*Davis*, 291 Ark. at 476, 725 S.W.2d at 847, (quoting *Lane* v. *Rachel*, 239 Ark. 400, 389 S.W.2d at 621 (1965). We note that the cases involving fraud under Ark. R. Civ. P. 60 are cases of fraud upon the court. However, the language in the definition of fraud adopted by this court simply requires a "tendency to deceive others."

Appellant claims the breach of legal or equitable duty is patent, and the actions of appellee, by and through her counsel, evidence this breach of duty. The alleged actions of appellee upon which appellant bases its argument are: 1) hastily contriving a hearing on a case knowing appellant, the only party with an interest adverse to Coe, had not been given notice of the hearing and thus would not have opportunity to defend; 2) misrepresenting to the trial court at the commencement of the trial that there was no settlement agreement,when in fact the entire controversy between Coe, Brad Beaty, and Farmers was settled and Beaty had agreed to assign to Coe all rights he had against appellant; and 3) conspiring with Beaty to induce the trial court to enter an excessive judgment in reliance on reports and other material which were never introduced into evidence and therefore, were not a part of the record.

■ We cannot say any action of appellee, by and through her attorney, in any way deceived appellant. In light of the

circumstances at the time, the actions of appellee's attorney were taken in her best interest. Appellee had past medical expenses and would certainly incur substantial additional medical expenses. She was not able to pursue her career. Her interest in going forward with the lawsuit is apparent. Appellant had notice of the lawsuit and that the amount of damages sought exceeded the amount of primary coverage. We cannot say that appellee's actions in expediting the lawsuit deceived appellant.

As for the alleged misrepresentation to the court concerning any settlement agreement, at the November 3, 1989 hearing on appellant's motions, the court heard testimony from the attorneys involved in the March 23, 1989 trial. Appellee's attorney testified that on March 23, 1989, there was an oral agreement between the parties. He said it had not been reduced to writing and that, depending on the proceedings that day, was subject to being changed. Brad Beaty's attorney testified the parties had "an oral agreement to be consummated in writing and subject to the approval of this clients and my client." He continued by saying that "we had one in principle before, but, we had a binding agreement after the trial." Both attorneys testified that the trial court was aware of the tentative agreement. We cannot say that any party by these actions practiced a fraud upon the court.

Appellant's contention that appellee conspired with Beaty to induce the trial court to enter the judgment is without merit. Although not all the evidence was introduced into evidence to be made a part of the record, the evidence was before the court. In its Findings of Facts and Conclusions of Law, the court referred to the various items of evidence and the testimonies of the different witnesses. Under the circumstances, there was no need for appellee to establish a detailed record. We cannot say her failure to do so was part of a conspiracy to induce the court to enter an excessive judgment.

IV.

THE TRIAL COURT ABUSED ITS DISCRETION IN ALLOWING APPELLANT'S MOTION FOR NEW TRIAL UNDER RULE 59(a)(1) and (a)(4) TO BE DEEMED DENIED.

On August 25, 1989, appellant filed a Motion for Relief from

Judgment and for New Trial. On October 24, 1989, appellant filed a Notice of Appeal and Designation of Record, by which it sought to appeal "from any effectual deemed denial by the trial court of its request for a new trial pursuant to Rule 59 of the Arkansas Rules of Civil Procedure."

The bases of appellant's Motion for New Trial are Ark. R. Civ. P. 59(a)(1) and (a)(4), which provide as follows:

> (a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues on the application of the party aggrieved, for any of the following grounds materially affecting the substantial rights of such party: (1) any irregularity in the proceedings or any order of court or abuse of discretion by which the party was prevented from having a fair trial; . . . (4) excessive damages appearing to have been given under the influence of passion or prejudice[.]

Appellant argues that "irregularities in the proceedings" occurred in the trial court which compelled the ordering of a new trial. The alleged irregularities include both the entry of a judgment in excess of ten times the amount of damages pleaded, where said judgment was based on the obvious collusion between appellee and Brad Beaty, the named defendant, and the inducement of the trial court to enter judgment based upon matters not introduced into evidence or made a part of the record.

Appellant also contends the $8,002,178.15 judgment was excessive and appears to have been given under the influence of passion or prejudice. Appellant contends the language used in the Findings of Facts and Conclusions of Law indicates the award of damages was affected by passion. The specific language appellant refers to is the use of the word "grotesque" by the court in describing the tissue grafting on appellee's ankle; the court's stating that it "certainly understands the plaintiff's testimony regarding the embarrassment theses scars and disfiguring areas cause her;" and the court's stating that it was "impressed with" the testimonies of appellee, her family, and her fiance.

On appellate review, the test of a denial of a motion for new trial is whether the verdict is supported by substantial evidence, giving the verdict the benefit of all reasonable infer-

ences permissible under the proof. *Schuster's, Inc.* v. *Whitehead*, 291 Ark. 180, 722 S.W.2d 862 (1987).

A review of the record reveals that the court received testimony and evidence at the March 23, 1989 trial. The parties stipulated to past medical expenses in the amount of $130,230.43. Also stipulated was a transcribed statement of appellee's attending physician, Dr. Shubert of Baylor University Medical Center in Dallas, Texas. The parties also agreed that a vocational assessment report, which was being prepared by Dr. Wayne Werner, would be submitted to the court. A videotape of "a day in the life of Jackie Sue Coe" was played, followed by testimony from appellee as well as her mother, father, sister, and fiance.

Appellee testified about her past work experience and the prospects for the future concerning her job. She also told the court about the activities she enjoyed prior to the accident such as softball, water skiing, and horseback riding. She said since the accident the only outdoor recreation in which she could participate was fishing. She talked about the pain and anxiety she experienced in undergoing some twenty-five surgical procedures on her ankles. She said several more surgeries would be necessary and, according to her doctor, the possibility still existed that she might lose one of her legs. The other witnesses related their observations concerning appellee's pain and suffering and the changes in her lifestyle since the accident.

In the Findings of Fact and Conclusions of Law filed August 11, 1989, the court sated that it "further is of the opinion that the proof in this cause of action far exceeds the amount plead for and the pleadings should be deemed amended to conform to the evidence offered in this case." Although the judgment was in excess of the amount of damages pleaded, there is substantial evidence to support the court's entering judgment as it did. We cannot say that the alleged irregularities were such that appellant was prevented from having a fair trial. Finally, the language used by the court in its Findings of Fact and Conclusions of Law is simply descriptive and, in light of the evidence and testimony before the court, is not inappropriate. We certainly cannot infer from that language that the entry of the judgment was based on passion. Therefore, we cannot say the trial court erred in allowing appellant's Motion for New Trial under Ark. R. Civ. P. 59(a) to

be deemed denied.

Affirmed.

HAYS and GLAZE, JJ., concur.

BROWN, J., not participating.

TOM GLAZE, Justice, concurring. I concur. For me, the difficult issue in this appeal is the due process question raised by RLI. As pointed out by the majority, RLI had notice of the pending lawsuit, but relied upon the insured's and the primary carrier's (Farmers Insurance's) attorney, G. William Lavender, to keep RLI apprised as to the progress of the case. The majority opinion correctly details the facts leading to Lavender's failure to inform RLI of the insured's and Farmer's settlement with the plaintiff, Jackie Coe. Nor did Lavender inform RLI of the March 23, 1989, trial that resulted in the eight million dollar judgment entered on April 20, 1989. Coe, Farmers and the insured were aware that RLI had the excess coverage in this case and therefore had a personal stake in its outcome. Nevertheless, as already noted, RLI was never notified of the March 23 trial by Coe, Farmers, Lavender or the insured, even though RLI's excess coverage was unquestionably in jeopardy. If these were the only events that had occurred, I would question whether adequate notice had been provided RLI.

The record is not clear as to when RLI became aware of the April 20, 1989 judgment, but it is clear RLI was aware of that judgment by June 7, 1989. On that date, RLI wrote the trial judge notifying him that RLI had been sued in federal court by Coe based upon certain rights she obtained under the April 20 judgment. RLI also asked the court not to take further action in the Coe lawsuit without notice being given RLI. By letter dated June 13, 1989, the judge advised RLI's counsel that he knew of nothing pending in Coe's portion of the lawsuit, but the other two plaintiffs' claims would be tried in the future. He further advised that, if RLI intended to defend against those claims, RLI should enter its appearance in the proceedings.

At this point in time, RLI was fully apprised that Coe's claim was one of three involved in the same lawsuit, that Coe's claim had been reduced to judgment and that two parties' claims were still pending. Coe's judgment, however, was not a final one, as can

be discerned by reading ARCP Rule 54(b), which provides as follows:

> (b)  Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, *and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.* (Emphasis added.)

Here, the trial court made no express finding in its April 20 judgment that Coe's claim should be made final because there was no just reason for its delay. As a consequence, the trial court's decision was subject to revision at any time prior to the other parties' claims being adjudicated. In sum, if RLI had acted to intervene in Coe's and the other parties' lawsuit in June 1989, it could have timely raised the objections it later attempted to raise after August 11, 1989 — the date the trial court entered a judgment in Coe's behalf that complied with the requisites of Rule 54. In sum, Coe's judgment was not final until August 11th, not April 20th.

This court has emphasized that it is the duty of a litigant to keep himself informed of the progress of his case. *Midwest Timber Products Co., Inc.* v. *Self*, 230 Ark. 872, 327 S.W.2d 730 (1959); *Trumbell* v. *Harris*, 114 Ark. 493, 170 S.W. 222 (1914); *Meisch* v. *Brady*, 270 Ark. App. 652, 606 S.W.2d 112 (1980). In the present case, RLI had ample notice and opportunity to have raised and litigated the issues below that it now argues on appeal. While RLI's grievance with Farmers and its attorney may have some merit concerning the latters' failure to keep RLI informed

as agreed, Coe owed no such duty. RLI was, in my view, entitled to procedural due process, which included notice of the pending lawsuit and an opportunity to be heard. The record reflects RLI was afforded such due process. Therefore, I join in the majority's decision upholding Coe's judgment.